THOMPSON, administrator, &c. *vs.* THE TIOGA RAIL ROAD
COMPANY.

The statute of limitations does not operate as a bar to an action in the courts
of New York, against a foreign corporation.

Such a corporation is within the exception to the operation of the statute, by
which the time of absence from the state is not to be taken as any part of
the time limited for the commencement of an action.

Where drafts were drawn by W., the president of a corporation, and signed
with his own name, with the addition of "Prest. T. N. Co.," and it was
proved that he drew the drafts in his capacity of president, for the benefit
of the company; that the company received the proceeds; and that it sub-
sequently recognized its liability by giving its bond as collateral; *Held* that
the evidence showed that the signature of W. was official, and not private,
and rendered the drafts the drafts of the company, within the cases of *Bab-
cock* v. *Beman*, (11 *N. Y. Rep.* 200,) and *The Bank of Genesee* v. *The
Patchin Bank*, (19 *id.* 312.)

THIS suit was brought to recover the amount due upon
three several bills of exchange, drawn by the Tioga Nav-
igation Company. The bills were signed by James R. Wil-
son as "Prest. T. N. Co." They were all dated June 1st,
1840. Two of them were for $5000, and one of them for
$4000. Each bill was dishonored and duly protested. The
name of *The Tioga Navigation Company*, the drawers, which
was a corporation existing under the laws of Pennsylvania,
was, by a special act of the legislature of that state, changed
to that of *The Tioga Rail Road Company*, against which
company this suit is brought. The answer set up, among
other things, 1. That the action was barred by the New York
statute of limitations; 2. That the drafts were the individual
drafts of Wilson, by whom they were signed; and 3. That
Wilson, by whom the bills were drawn, had no power to bind
the defendants. Wilson was the president of that corpora-
tion, at the date of the drafts. In his capacity as such, he
drew the drafts for the company, and the company received
the avails of the drafts. Subsequently, the Tioga Navigation
Company itself recognized its liability upon these drafts, by
giving its own bond as collateral to the notes which Messrs.

Gulich, Saynisch and Bostwick had given to Abraham G. Thompson, to secure the payment of these very drafts.

The case was tried at the circuit, before Mr. Justice INGRAHAM and a jury, when the court ordered a nonsuit, and judgment for the defendants was entered accordingly. The plaintiff appealed.

*E. P. Cowles,* for the appellant.

——— ——— for the respondent.

*By the Court,* CLERKE, P. J.   I. The case of *Olcott* v. *The Tioga Rail Road Company,* (20 *N. Y. Rep.* 210,) conclusively settles that our statute of limitations does not operate as a bar to this action.

II. In *Babcock* v. *Beman,* (1 *Kern.* 200,) the defendant indorsed the note, upon which the action was brought, by writing his name upon it and adding the word "Treasurer," and the note itself was payable to him with the addition of the usual abbreviation of the word. The drafts in the case under consideration were signed by James R. Wilson, with the addition of the abbreviated words, "Prest. T. N. Co." They were made payable to his order, and were indorsed by him. The instruments in both cases, in form and substance, were similar, so far as the personal liability of the indorser in the one case, and the drawer in the other, was concerned. The extrinsic facts, also, in the case before us, are analogous to those in *Babcock* v. *Beman,* and to those in the *Bank of Genesee* v. *Patchin Bank,* (19 *N. Y. Rep.* 312.) The instruments purport, on their face, with sufficient clearness, to be the drafts of the company. It was proved at the trial that Wilson was, at the time, president of the corporation; that in his capacity as such he drew the drafts for the benefit of the company; that the company received the proceeds; and that subsequently they recognized their liability by their own bond as collateral to the notes, which Messrs. Gulich,

Saynisch and Bostwick had given to secure the payment of these drafts. The evidence, then, unquestionably shows that the signature of Wilson was official and not private, and brings this case within the essential principles of the cases to which I have already referred.

III. The company had power to borrow money to defray its expenses and pay its debts, and it ratified the authority of its agent by receiving the proceeds of the drafts and appropriating the money to the payment of its debts and expenses.

The judgment should be reversed, and a new trial ordered; costs to abide the event.

