"A person who makes, or causes or procures to be made, any dissection of the body of a human being, except by authority of law, or in pursuance of a permission given by the deceased, is guilty of a misdemeanor." Section 2214.

It is not alleged that this defendant either made, or caused or procured to be made, the autopsy complained of.

[6] Nor can the demurrer be upheld by analogy to a case of a bailment of goods, where a warehouseman has received the goods in an undamaged condition and delivers them damaged. In the latter case liability is predicated upon the presumption that the bailee has been guilty of breach of contract, or negligence, or conversion, and the damages recoverable are for the injury to the property rights of the bailor, and even in such a case the complaint must allege the negligence or conversion of which the damaged condition of the goods is but evidence.

It is well settled, however, that there are no property rights, in the ordinary commercial sense, in a dead body, and the damages allowed to be recovered for its mutilation are never awarded as a recompense for the injury done to the body as a piece of property. Beaulieu v. Gt. Northern R'way Co., 103 Minn. 47, 114 N. W. 353, 19 L. R. A. (N. S.) 564, 14 Ann. Cas. 462. The question at bar is somewhat analogous to that recently considered by this court in Coleman v. St. Michael's Protestant Episcopal Church, 170 App. Div. 658, 155 N. Y. Supp. 1036, wherein it was sought to hold a cemetery owner liable for the theft of a body from the cemetery by some third person. The defendant's liability in that case was sought to be predicated upon some presumed duty to take positive precautions to prevent such an unlawful act, but it was unanimously held that no such active duty was imposed upon the corporation. So in the present case no obligation is imposed by law upon the defendant, except to refrain from actively participating, by its servants or otherwise, in the unlawful mutilation of the body of a patient who dies within its walls, and from causing or procuring such a mutilation to take place. To go further would be to charge it as an insurer, and to hold it to an even stricter accountability than would be imposed upon a bailee of merchandise.

The order appealed from must be reversed, with $10 costs and disbursements, and the demurrer overruled, with $10 costs, with leave to plaintiff to amend her complaint within 20 days upon payment of costs. Order filed. All concur.

---

(173 App. Div. 221)

### BURKE v. GALVESTON, H. & H. R. CO.

(Supreme Court, Appellate Division, First Department. June 2, 1916.)

1. CORPORATIONS ⊜654—FOREIGN CORPORATIONS—TRANSACTION OF BUSINESS —STATUTE.

     A foreign corporation receiving a certificate of authority to do business, in the state, exempting it from General Corporation Law (Laws 1890, c. 563) § 15, as added by Laws 1892, c. 687, prohibiting a foreign corporation from maintaining an action in the state upon any contract made by

it within the state, thereby became entitled to the same right to transact business in the state as a domestic corporation, and to all the privileges, immunities, and rights of action given to a domestic corporation.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2551, 2556; Dec. Dig. ☞654.]

2. CORPORATIONS ☞661(1)—FOREIGN CORPORATIONS—ACTION—LIMITATIONS.
Such corporation was also entitled to plead the statute of limitations as if it were a domestic corporation.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2563, 2565– 2567; Dec. Dig. ☞661(1).]

3. CORPORATIONS ☞668(8)—FOREIGN CORPORATIONS—PROCESS.
A foreign corporation, authorized to do business in the state, whose president and assistant secretary and treasurer, both competent to transact its business within the state and whose freight and passenger agent resided in the state, and which kept a bank account in the state, and whose only proof that it was not doing business in the state was an affidavit of a vice president and general manager residing in the state of Texas, having a limited knowledge of its affairs within the state, and whose designated agent to receive service of process could not be found, might be served by service on any officer within the state competent to transact its business.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2614; Dec. Dig. ☞668(8).]

Appeal from Special Term, New York County.

Action by James J. E. Burke against the Galveston, Houston & Henderson Railroad Company. From an order denying defendant's motion to set aside the service of a summons, it appeals. Order affirmed.

Argued before CLARKE, P. J., and SCOTT, DOWLING, SMITH, and PAGE, JJ.

Stuart T. B. Morison, of New York City, for appellant.

Arthur W. Clement, of New York City, for respondent.

PAGE, J. [1, 2] The defendant, a foreign corporation, in 1893 applied for and received from the secretary of state a certificate of authority to do business in this state. By virtue of that certificate it was exempted from the statute whereby a foreign corporation was prohibited from maintaining an action in this state upon any contract made by it within the state. General Corporation Law, § 15; Laws 1890, c. 563, as added by Laws 1892, c. 687. It thereby became entitled to the same right to transact business here as a domestic corporation had. Lancaster v. Amsterdam Imp. Co., 140 N. Y. 576, 588, 35 N. E. 964, 24 L. R. A. 322. It also was entitled to plead the statute of limitations, as if it were a domestic corporation. Wehrenberg v. N. Y., N. H. & H. R. R. Co., 124 App. Div. 205, 108 N. Y. Supp. 704. Thus by applying for and receiving the certificate, evidencing its intention to subject itself to the jurisdiction and laws of this state, it had extended to it all the privileges, immunities, and rights of action that were given to a domestic corporation.

[3] This certificate has never been revoked and is still in full force and effect. This corporation has residing here its president

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

and an assistant secretary and treasurer, both competent to transact business of the corporation within this state, and also a freight and passenger agent was located here. The defendant kept a bank account in this city. If it can overcome the presumption that it is doing business within this state, and that it is not subject to the jurisdiction of our courts (which we do not determine), it should at least be required to present clear and convincing proof, that in fact it is not so transacting business. The only proof that is submitted is the affidavit of a vice president and general manager, residing and having his office in the state of Texas whose knowledge of its affairs within this jurisdiction was so limited that he stated in his affidavit that the corporation had never received a certificate to do business within this state. The affidavits of neither the president, assistant secretary, and treasurer, nor of the freight and passenger agent, as to what business of the corporation they transacted here, were submitted. The agent designated in the certificate to receive service of process could not be found. In my opinion it was competent for service to be made upon any officer within the state competent here to transact the business of the corporation.

Therefore the motion was properly denied, and the order should be affirmed, with $10 costs and disbursements. All concur.